## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## SOUTHERN DIVISION

| | | |
|---|---|---|
| ADVANCE DENTAL CARE, INC., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 10-cv-01286-AW |
| | * | |
| SUNTRUST BANK, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### MEMORANDUM OPINION

Pending before the Court is Defendant SunTrust Bank's Motion for Partial Summary Judgment.  Doc. No. 49.  The court has reviewed the motion papers and attached exhibits and concludes that no hearing is necessary.  Loc. R. 105.6 (D. Md. 2011).  For the reasons discussed below, the Court will GRANT SunTrust's Motion for Partial Summary Judgment.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

The following undisputed facts are taken from the Complaint and the motion papers and exhibits.[1]  Prior to 2004, Michelle Mahese (later known as Michelle Rampersad) worked as a dental assistant and office manager for William Taylor, DDS.  Early in 2004, Rampersad was terminated by Dr. Taylor for stealing money from his practice.  Rampersad then applied for a job with Plaintiff Advance Dental Care, Inc. (Advance Dental) and was hired as the office administrator in early 2004.  Advance Dental is a general dental practice in Greenbelt, Maryland, and Riccardo Jones, DDS is the only dentist in the practice.  Dr. Jones admitted in his deposition that he did not conduct a background investigation of Ms. Rampersad prior to hiring her.

---

[1] The Court also incorporates by reference the factual and procedural background as described in its March 25, 2011 Order, Doc. No. 9, and October 7, 2011 Memorandum Opinion, Doc. No. 27.

The majority of Advance Dental's patients are covered by insurance.  As a result, Advance Dental regularly receives insurance reimbursement checks by mail for services rendered to its patients.  One of Rampersad's responsibilities was to log the reimbursement checks into a software program utilized by Advance Dental to monitor patient accounts. Rampersad was employed by Advance Dental from early 2004 until her termination in October 2007.[2]  From April 2004 through August 2007, Rampersad took 192 insurance reimbursement checks totaling $408,272.64 that were delivered and made payable to Advance Dental and removed them from the premises of Advance Dental.  Rampersad endorsed the checks to herself and delivered them to Defendant SunTrust Bank, which accepted the checks and deposited funds into Rampersad's personal accounts.  Advance Dental claims that it first became aware of Rampersad's conduct in late summer or early fall of 2007.

Advance Dental filed this action in the Circuit Court for Prince George's County on April 21, 2010.  The case was removed to this Court on May 21, 2010.  On March 25, 2011, the Court dismissed Count II of the Complaint, holding that there was no action for negligence under the Uniform Commercial Code (UCC).  Doc. No. 9.  On October 7, 2011, the Court dismissed Advance Dental's common law negligence claim.  *See* Doc. No. 27.  The only cause of action remaining against SunTrust is for conversion under Maryland's version of the UCC.

## II.     STANDARD OF REVIEW

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986).  The Court must "draw all justifiable

---

[2] Rampersad was rehired by Advance Dental at some point following her termination, but it is not clear from the parties' briefs when she was rehired.

inferences in favor of the nonmoving party, including questions of credibility and of the weight

to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520

(1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  In ruling on a motion

for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the

drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ."

*Okoli v. City of Balt.*, 648 F.3d 216, 231 (4th Cir. 2011) (quoting *Anderson*, 477 U.S. at 255).

To defeat a motion for summary judgment, the nonmoving party must come forward with

affidavits or other similar evidence to show that a genuine issue of material fact exists.  *See*

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  A disputed fact

presents a genuine issue "if, after reviewing the record as a whole . . . a reasonable jury could

return a verdict for [the non-moving party]." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d

954, 959 (4th Cir. 1996) (citing *Anderson*, 477 U.S. at 248).  Although the Court should believe

the evidence of the nonmoving party and draw all justifiable inferences in his favor, a

nonmoving party cannot create a genuine dispute of material fact "through mere speculation or

the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

III.    ANALYSIS

SunTrust claims in its Motion for Partial Summary Judgment that the checks converted

prior to April 21, 2007 should be precluded from this lawsuit based on the Maryland UCC's

three-year statute of limitations for conversion claims.  The 177 checks upon which SunTrust

seeks judgment as a matter of law are valued at $344,311.64.  *See* Doc. No. 49-3.  Advance

Dental claims that the three-year statute of limitations began running in or about September 14,

2007, when it first learned of the conversions.  The central issue before the Court is whether the

discovery rule applies to a claim for conversion under the Maryland UCC.  Maryland courts have

not addressed this question, and in the absence of a pertinent decision, the Court must apply the

rule of decision it believes the Maryland Court of Appeals would apply. *See Erie R.R. v.*

*Tompkins*, 304 U.S. 64, 78–79 (1938).  After a thorough review of the pertinent legal authorities,

the Court concludes that the Maryland Court of Appeals would not apply the discovery rule to

UCC conversion claims.

As codified by the State of Maryland, the UCC provides that "[a]n instrument is . . .

converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce

the instrument or a bank makes or obtains payment with respect to the instrument for a person

not entitled to enforce the instrument or receive payment."  MD. CODE ANN., COM. LAW § 3-

420(a).  The Maryland Code further provides that "an action . . . for conversion of an instrument,

for money had and received, or like action based on conversion . . . must be commenced within 3

years after the cause of action accrues."  *Id.* § 3-118(g).  The Maryland Code also contains a

general statute of limitations provision which employs substantially similar language to the UCC

provision: "A civil action at law shall be filed within three years from the date it accrues unless

another provision of the Code provides a different period of time within which an action shall be

commenced."  MD. CODE ANN., CTS. & JUD. PROC. § 5-101.

Historically, the general rule in Maryland was that all causes of action accrued on the

date the wrong was committed. *See Hecht v. Resolution Trust Corp.*, 635 A.2d 394, 399 (Md.

1994).  However, beginning with *Hahn v. Claybrook*, 100 A. 83 (Md. 1917), the Maryland Court

of Appeals began applying the discovery rule, which provides that a cause of action accrues

when a plaintiff knows or reasonably should know of the wrong.  In subsequent years the Court

of Appeals applied the discovery rule to multiple causes of action, including negligent design

and construction, *Callahan v. Callahan*, 41 A.2d 473 (Md. 1945), medical malpractice, *Waldman*

*v. Rohrbaugh*, 215 A.2d 825 (Md. 1966), and other professional malpractice claims, *e.g.*,

*Mumford v. Staton, Whaley, & Price*, 255 A.2d 359 (Md. 1969) (legal malpractice).  In *Harig v.*

*Johns-Manville Products*, 394 A.2d 299 (Md. 1978), the Court of Appeals extended the

discovery rule to claims involving latent diseases, holding that "the critical factor in all

applicable cases to be the inherently unknowable character of the injury."  *Hecht*, 635 A.2d at

400 (internal quotations omitted).

In *Poffenberger v. Risser*, the Court of Appeals, in interpreting Maryland's general

statute of limitations provision, § 5-101, held that the discovery rule applied to all civil causes of

action:

> Having already broken the barrier confining the discovery principle to
> professional malpractice, and sensing no valid reason why that rule's sweep
> should not be applied to prevent an injustice in other types of cases, we now hold
> the discovery rule to be applicable generally in all actions and the cause of action
> accrues when the claimant in fact knew or reasonably should have known of the
> wrong.

431 A.2d 677, 680 (Md. 1981).  Subsequent decisions from Maryland courts reaffirmed the

general applicability of the discovery rule.  *See, e.g.*, *Pierce v. Johns-Manville Sales Corp.*, 464

A.2d 1020, 1025 (Md. 1983); *Hecht*, 635 A.2d at 399–400; *Bacon & Assocs., Inc. v. Rolly*

*Tasker Sales (Thailand) Co.*, 841 A.2d 53 (Md. Ct. Spec. App. 2004) (applying discovery rule to

breach of contract claims).  In *Murphy v. Merzbacher*, the Court of Appeals stated that the

discovery rule "is not so much an exception to the statute of limitations, as it is a recognition that

the Legislature, in employing the word 'accrues' in § 5-101 never intended to close our courts to

plaintiffs inculpably unaware of their injuries."  697 A.2d 861, 865 (Md. 1997).

As mentioned above, whether the discovery rule applies to conversion claims brought

under the Maryland UCC is a question of first impression.  Plaintiff maintains that the Court of

Appeals's holding evidences a strong public policy in support of the discovery rule such that it

should also be applied to UCC conversion claims.  However, the Court is charged with

determining when accrual occurs under § 3-118(g) of the Maryland UCC.  Although its language

is similar to § 5-101, § 3-118 is part of a distinct statutory scheme—the Uniform Commercial

Code—and concerns a cause of action never addressed by the Court of Appeals when it

developed and expanded application of the discovery rule.

A vast majority of courts in other jurisdictions have held that, in the absence of fraudulent

concealment on the part of the defendant asserting the statute-of-limitations defense, the

discovery rule does not apply to claims for conversion under the UCC.[3]  *See, e.g.*, *Hawkins v.*

*Nalick*, 975 N.E.2d 793, 798 (Ill. Ct. App. 2012) (reviewing cases and concluding that an

"overwhelming majority" of jurisdictions do not apply the discovery rule); *Mandolfo v.*

*Mandolfo*, 796 N.W.2d 603, 610–11 (Neb. 2011) (same).  Although a few courts have applied

the discovery rule to UCC conversion claims,[4] the Court concludes that the Maryland Court of

Appeals would follow the majority approach.

---

[3] *See, e.g.*, *Mandolfo v. Mandolfo*, 796 N.W.2d 603, 610–12 (Neb. 2011); *Mattlin Holdings, LLC v. First City Bank*, 937 N.E.2d 1087, 1089–91 (Ohio Ct. App. 2010); *Peak Performance Physical Therapy & Fitness, LLC v. Hibernia Corp.*, 992 So.2d 527, 530–33 (La. Ct. App. 2008); *N.J. Lawyers' Fund for Client Prot. v. Pace*, 892 A.2d 661, 662 (N.J. 2006); *AmerUS Life Ins. Co. v. Bank of Am., N.A.*, 49 Cal. Rptr. 3d 493, 500 (Cal. Ct. App. 2006); *Auto-Owners Ins. Co. v. Bank One*, 852 N.E.2d 604, 610–12 (Ind. Ct. App. 2006), *rev'd on other grounds*, 879 N.E.2d 1086 (Ind. 2008); *Rodrigue v. Olin Emps.' Credit Union*, 406 F.3d 434, 444–47 (7th Cir. 2005) (applying Illinois law); *John Hancock Fin. Servs., Inc. v. Old Kent Bank*, 346 F.3d 727, 733–34 (6th Cir. 2003) (applying Michigan law); *Yarbro, Ltd. v. Missoula Fed. Credit Union*, 50 P.3d 158, 161–63 (Mont. 2002); *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 621–25 (Tenn. 2002); *Brennan v. Edward D. Jones & Co.*, 626 N.W.2d 917, 919 (Mich. Ct. App. 2001); *Smith v. Franklin Custodian Funds, Inc.*, 726 So.2d 144, 148 (Miss. 1998); *Haddad's of Ill., Inc. v. Credit Union 1 Credit Union*, 678 N.E.2d 322, 324–26 (Ill. Ct. App. 1997); *Menichini v. Grant*, 995 F.2d 1224, 1229–32 (3d Cir. 1993) (applying Pennsylvania law); *First Investors Corp. v. Citizens Bank, Inc.*, 757 F. Supp. 687, 690 (W.D.N.C. 1991) (applying North Carolina law), *aff'd* 956 F.2d 263 (4th Cir. 1992) (unpublished table decision); *Husker News Co. v. Mahaska State Bank*, 460 N.W.2d 476, 477–79 (Iowa 1990); *Kuwait Airways Corp. v. Am. Sec. Bank, N.A.*, 890 F.2d 456, 460–63 (D.C. Cir. 1989) (applying District of Columbia law); *Wang v. Farmers State Bank of Winner*, 447 N.W.2d 516, 518–19 (S.D. 1989); *Sw. Bank & Trust Co. v. Bankers Commercial Life Ins. Co.*, 563 S.W.2d 329, 331–32 (Tex. Ct. App. 1978); *Fuscellaro v. Indus. Nat'l Corp.*, 368 A.2d 1227, 1229–31 (R.I. 1977); *Gerber v. Mfrs. Hanover Trust Co.*, 315 N.Y.S.2d 601, 603 (N.Y. Civ. Ct. 1970).

[4] *See, e.g.*, *Mauldin Furniture Galleries, Inc. v. Branch Banking & Trust Co.*, No. 6:10-240-TMC, 2012 WL 3680426, at *4–5 (D.S.C. Aug. 27, 2012) (applying South Carolina law); *Fine v. Sovereign Bank*, No. 06cv11450-NG, 2010 WL 3001194, at *4–5 (D. Mass. July 28, 2010) (applying Massachusetts law); *YF Trust v. JPMorgan Chase Bank*, No. CV 07-567-PHX-MHM, 2008 WL 4277902, at *3–4 (D. Ariz. Sept. 18, 2008) (applying Arizona

There are two major principles underlying the majority approach. The first principle is the UCC's promotion of the finality of transactions. "The finality of transactions promoted by an ascertainable definite period of liability is essential to the free negotiability of instruments on which commercial welfare so heavily depends." *Fuscellaro v. Indus. Nat'l Corp.*, 368 A.2d 1227, 1231 (R.I. 1977); *see also Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 622–23 (Tenn. 2002) ("[T]he commercial policies underlying the Uniform Commercial Code . . . militate strongly against open-ended liability on negotiable instruments."); *Menichini v. Grant*, 995 F.2d 1224, 1229–30 (3d Cir. 1993) ("[M]ost courts have refused to apply the discovery rule to negotiable instruments, finding it inimical to UCC policies of finality and negotiability.").

Furthermore, adoption of the majority approach simplifies and clarifies the law governing commercial transactions and fosters uniformity among the various jurisdictions, two of the underlying purposes and policies of the Maryland UCC. *See, e.g.*, MD. CODE, COM. LAW § 1-103(b) (2012); *see also Pero's Steak*, 90 S.W.3d at 624 ("[A]doption of the majority rule also fosters uniformity, which is a fundamental objective of the Uniform Commercial Code and the [Tennessee UCC].").  The Court believes that adopting the aberrational minority approach and applying the discovery rule to § 3-118(g) of the Maryland UCC would thwart the intent of the Maryland legislature and contravene public policy. Even if the Court of Appeals's pronouncements with respect to § 5-101 evidence a strong policy in favor of the discovery rule, the Court cannot ignore the distinct and important policy considerations underlying the Maryland UCC. *See* Doc. No. 27, *Advance Dental Care, Inc. v. SunTrust Bank*, 816 F. Supp. 2d 268,

---

law); *Gallagher v. Santa Fe Fed. Emps. Fed. Credit Union*, 52 P.3d 412, 416–17 (N.M. 2002); *Stjernholm v. Life Ins. Co. of N. Am.*, 782 P.2d 810, 811–12 (Colo. Ct. App. 1989); *DeHart v. First Fidelity Bank, N.A.*, 67 B.R. 740, 744–45 (D.N.J. 1986) (applying New Jersey law); *Branford State Bank v. Hackney Tractor Co., Inc.*, 455 So.2d 541, 542 (Fla. Dist. Ct. App. 1984).

271–72 (D. Md. 2011) (determining that the UCC attempts to establish "reliability, uniformity, and certainty in commercial transactions").

The second principle supporting the majority approach is that the injury in UCC conversion cases is readily apparent at the time of conversion, thus obviating the need to apply the discovery rule. As noted by the D.C. Circuit, "the discovery rule emerged to redress situations in which the fact of the injury was not readily apparent and indeed might not become apparent for several years after the incident causing injury had occurred." *Kuwait Airways Corp. v. Am. Sec. Bank, N.A.*, 890 F.2d 456, 461 (D.C. Cir. 1989) (citations omitted) (internal quotation marks omitted). The Maryland Court of Appeals similarly held that the discovery rule is appropriate where "stealth, subterfuge, or other difficulties of detection leave a plaintiff blamelessly ignorant of the facts and circumstances legally entitling him or her to relief." *Murphy*, 597 A.2d at 864–65 (internal quotation marks omitted). In a conversion case, however, the injury to a payee "manifests itself at the time the wrongful act occurs—that is, when the forger deposits or cashes the check." *Kuwait Airways Corp.*, 890 F.2d at 461–62; *see also Mandolfo*, 796 N.W.2d at 611 ("In rejecting the discovery rule, many courts reason that the victim of conversion is often in the best position to prevent or detect the loss."); *Pero's Steak*, 90 S.W.3d at 623 ("[T]he law of conversion presumes that property owners know what their assets are and where they are located. . . . [P]ersons alleging conversion, and particularly conversion of a negotiable instrument, generally should be able to easily and quickly detect the loss and take appropriate action."). Although the Maryland Court of Appeals applied the discovery rule to all civil actions under § 5-101, the Court does not believe it would do so with respect to § 3-118(g) given that the underlying rationale for the rule largely evaporates in the context of conversion of negotiable instruments.

Plaintiff cites case law from several jurisdictions that have applied the discovery rule to

UCC conversion claims, but the Court finds these cases either distinguishable or unpersuasive.

Plaintiff cites three unpublished opinions from federal district courts, which concluded that the

state courts of South Carolina, Massachusetts, and Arizona would apply the discovery rule to

conversion claims under each state's version of the UCC.  *Mauldin Furniture Galleries, Inc. v.*

*Branch Banking & Trust Co.*, No. 6:10-240-TMC, 2012 WL 3680426, at *4–5 (D.S.C. Aug. 27,

2012); *Fine v. Sovereign Bank*, No. 06cv11450-NG, 2010 WL 3001194, at *4–5 (D. Mass. July

28, 2010); *YF Trust v. JPMorgan Chase Bank*, No. CV 07-567-PHX-MHM, 2008 WL 4277902,

at *3–4 (D. Ariz. Sept. 18, 2008).  All three opinions relied principally on the fact that the

respective state courts broadly applied the discovery rule to other causes of action.  *See, e.g.*,

*Mauldin*, 2012 WL 3680426, at *4 (noting that South Carolina courts "consistently favored" and

"regularly applied" the discovery rule); *Fine*, 2010 WL 3001194, at *4–5 (calling Massachusetts

courts' application of discovery rule "expansive"); *YF Trust*, 2008 WL 4277902, at *4 (applying

discovery rule to UCC conversion claims because Arizona Supreme Court had applied it to other

types of commercial disputes).  Plaintiff also relies on a case from the Colorado Court of

Appeals, which similarly held that the discovery rule applied to UCC conversion claims because

Colorado courts had "consistently favored" its application to other causes of action.  *Stjernholm*

*v. Life Ins. Co. of N. Am.*, 782 P.2d 810, 811–12 (Colo. Ct. App. 1989).

The Court is not persuaded by the reasoning of these opinions.  The Court agrees

generally with Plaintiff that Maryland courts have liberally and broadly applied the discovery

rule, but the fact that the discovery rule is applied to other civil actions pursuant to § 5-101 does

not automatically warrant its application to § 3-118(g) of the UCC.  Indeed, courts following the

majority approach have done so despite the relevant state courts' application of the discovery

rule to several other causes of action, including those to which Maryland courts have applied the rule.  *See, e.g.*, *Haddad's of Ill., Inc. v. Credit Union 1 Credit Union*, 678 N.E.2d 322, 326 (Ill. Ct. App. 1997) (following majority approach despite Illinois courts' application of discovery rule to claims of legal malpractice, medical malpractice, negligence and product liability, and fraud and tortious misrepresentation); *Husker News Co. v. Mahaska State Bank*, 460 N.W.2d 476, 477–79 (Iowa 1990) (following majority approach despite Iowa courts' application of discovery rule to claims involving breach of warranty, professional malpractice, workers' compensation, and tortious interference with contract); *Kuwait Airways Corp.*, 890 F.2d at 461–62 (following majority approach despite D.C. courts' application of discovery rule to claims involving medical malpractice, legal malpractice, latent diseases, breach of contract and warranty for deficient design and construction, and fraudulent concealment and misrepresentation).  Thus, even accepting Plaintiff's argument that Maryland courts' broad application of the discovery rule evidences a strong public policy in favor of the rule, the Court is nevertheless confident that the Maryland Court of Appeals would refuse to apply the discovery rule to UCC conversion claims.

Plaintiff also cites *Gallagher v. Santa Fe Federal Employees Federal Credit Union*, 52 P.3d 412 (N.M. 2002), to support its argument that the Maryland Court of Appeals would adopt the minority position.  In applying the minority approach, the *Gallagher* court relied primarily on a New Mexico statute that provided the following: "In actions for relief, on the ground of fraud or mistake, and in actions for injuries to, *or conversion of property,* the cause of action shall not be deemed to have accrued until the fraud, mistake, injury or conversion complained of, shall have been discovered by the party aggrieved."  *Id.* at 417 (citing N.M. STAT. ANN. 1978, § 37-1-7) (emphasis in original).  There is no comparable Maryland statute requiring application of the

discovery rule to 3-118(g) of the Maryland UCC.  Accordingly, the *Gallagher* court's

conclusions are inapposite.[5]

The Court's conclusion is buttressed by the fact that several provisions of the Maryland

UCC expressly provide that the discovery rule applies to other causes of action.  *See, e.g.*, MD.

CODE, COM. LAW §§ 3-417(f), 4-207(e), 4-208(f) (1997) ("A cause of action for breach of

warranty under this section accrues when the claimant has reason to know of the breach.").  The

absence of such language in § 3-118(g) indicates to the Court that the Maryland legislature did

not intend for the discovery rule to apply to conversion claims.

Courts following the majority approach have repeatedly noted that its application may be

harsh in certain cases.  *See, e.g.*, *Yarbro, Ltd. v. Missoula Fed. Credit Union*, 50 P.3d 158, 162–

63 (Mont. 2002); *Husker News*, 460 N.W.2d at 479.  This does not appear to be one of the harsh

cases, however.  Dr. Jones was the sole practitioner for Advance Dental and was responsible for

hiring, supervising, firing, and even rehiring Rampersad.  The amount Rampersad stole from

Plaintiff in 2006—approximately $116,262.30—nearly equaled the approximately $123,000.00

in income Jones reported in his tax returns for the same year.  *See* Doc. No. 49-2 at 67–69.

However, Dr. Jones claims he was unaware of Rampersad's conversion of checks until late

summer or early fall of 2007.  *Id.* at 81.  Even Plaintiff's expert, David Goodman, testified at his

deposition that Dr. Jones "should have been aware" of Rampersad's theft sometime in 2004 or

2005, even if Jones did not have actual notice of the theft or did not act negligently in failing to

---

[5] The Court is also not persuaded by two other opinions that adopted the minority approach.  *See supra* footnote 4.
It appears the federal district court's conclusions in *DeHart v. First Fidelity Bank, N.A.*, 67 B.R. 740, 744–45
(D.N.J. 1986), have been implicitly overruled by a recent New Jersey Supreme Court decision where the court
adopted the majority approach.  *See N.J. Lawyers' Fund or Client Prot. v. Pace*, 892 A.2d 661, 662 (N.J. 2006).
The Court has also reviewed *Branford State Bank v. Hackney Tractor Co., Inc.*, 455 So.2d 541, 542 (Fla. Dist. Ct.
App. 1984), in which the Florida appellate court held that the discovery rule applied to UCC conversion claims.  The
*Branford* court's analysis was cursory and did not address the majority approach, UCC policy considerations, or the
particularities of UCC conversion claims.

uncover the theft.  *See* Doc. No. 51-3 at 9, 15, 30–31.  Goodman also provided the following

deposition testimony:

> Q [Defendant's counsel]: I mean, had he compared the amount he was billing
> with the amount he was collecting, shouldn't he have realized that, boy, I'm
> billing X amount a month but I'm only collecting 60% and I should be
> somewhere around 85%?
> A [Goodwin]: So should he have?  Probably should have.  Did he know any
> better? Probably not.

*Id.* at 93:6–12 (emphasis added).[6]

Advance Dental and Riccardo Jones were in the best position to detect Rampersad's

conversion of Plaintiff's checks and reasonably should have been aware of her conduct.

Furthermore, it does not appear that stealth or subterfuge inhibited Plaintiff's detection of its

employee's illegal activity.  The Court agrees with the Iowa Supreme Court that "the public

would be poorly served by a rule that effectively shifts the responsibility for careful bookkeeping

away from those in the best position to monitor accounts and employees." *Husker News*, 460

N.W.2d at 479; s*ee also Kuwait Airways Corp.*, 890 F.2d at 461 ("There can be no question in

the instant case that an ordinary business could have detected the siphoning off of funds within a

three-year period of their conversion.").

The Court acknowledges that this case presents a close call, and it reflected seriously on

the possibility of certifying the case to the Maryland Court of Appeals.  Ultimately, however, the

Court is confident that the Court of Appeals would not apply the discovery rule to UCC

conversion claims.  The courts adopting this majority position include several of the nation's

highest state courts and several federal courts of appeal, and their opinions are thorough, well-

reasoned, and grounded on policy considerations identical to those underlying Maryland's

---

[6] Although not necessarily relevant to whether Plaintiff knew or should have known of Rampersad's conduct, the Court also finds it perplexing after Dr. Jones became aware of Rampersad's conduct and following her arrest, he rehired her to work for Advance Dental because she was familiar with the office, other employees had not worked out, and she was a "bright person."  Doc. No. 51-3 at 84–85.

version of the UCC.  The Court carefully considered the minority approach, but ultimately found

no basis to conclude that the Court of Appeals would apply the discovery rule to the causes of

action in this case.

Accordingly, the Court will grant Defendant's Motion for Partial Summary Judgment.

Count I of Plaintiff's Complaint is based on 192 checks that were converted by SunTrust

between April 2004 and August 2007.  *See* Doc. No. 49-3.  Plaintiff did not file this lawsuit until

April 21, 2010.  SunTrust is therefore entitled to judgment as a matter of law on the 177 checks

that were converted prior to April 21, 2007.

## IV.   CONCLUSION

For the reasons articulated above, the Court will **GRANT** Defendant's Motion for Partial

Summary Judgment.  A separate Order will follow.


____November 30, 2012___                             _____/s/_____
          Date                                    Alexander Williams, Jr.
                                                  UNITED STATES DISTRICT JUDGE